Hazel U. Poei (SBN 214928)
hazel.poei@jacksonlewis.com
JACKSON LEWIS P.C.
200 Spectrum Center Drive, Suite 500
Irvine, California 92618
Telephone: (949) 885-1360
Facsimile: (949) 885-1380

Jane J. Kim (SBN 327553)
jane.kim@jacksonlewis.com
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California 90017
Telephone: (213) 689-0404
Facsimile: (213) 689-0430

Attorneys for Defendant
SUNRISE SENIOR LIVING MANAGEMENT, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JENNIFER ARMIJO, individually, and on behalf of other similarly situated employees,<br><br>Plaintiff,<br><br>vs.<br><br>SUNRISE SENIOR LIVING MANAGEMENT, INC.; and DOES 1 through 25, inclusive,<br><br>Defendants. | **CASE NO.**<br><br>[Removed from Alameda County Superior Court Case No. 26CV193082]<br><br>**DEFENDANT SUNRISE SENIOR LIVING MANAGEMENT, INC.'S NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT PURSUANT TO 28 U.S.C. §§ 1332, 1441(b), AND 1446**<br><br>[Filed Concurrently with Civil Case Cover Sheet; Declarations of Keith Bown and Hazel U. Poei and Exhibits Related Thereto; Corporate Disclosure Statement; and Notice of Interested Parties]<br><br>Complaint Filed: June 9, 2026 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, TO PLAINTIFF JENNIFER ARMIJO AND HER ATTORNEYS OF RECORD**:

**PLEASE TAKE NOTICE** that Defendant SUNRISE SENIOR LIVING MANAGEMENT, INC. (hereinafter "Defendant"), by and through counsel, hereby removes this state court action to this Court's jurisdiction under the provisions of 28 U.S.C. §§ 1332(d), 1441(a) and 1446, thereby removing the above-entitled action from the Superior Court of the State of California in and for the County of Alameda (the "Superior Court") to the United States District Court for the Northern District of California (the "District Court") pursuant to the provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

## I. PLEADINGS AND PROCESS

1. On June 9, 2026, Plaintiff Jennifer Armijo ("Plaintiff") filed a Complaint ("Complaint") against Defendant in Alameda County Superior Court entitled *Jennifer Armijo v. Sunrise Senior Living Management, Inc., et al.*, Case No. 26CV193082 (the "State Court Action"). [Declaration of Hazel U. Poei ("Poei Decl."), ¶ 2].

1. In the Complaint, Plaintiff alleges nine (9) causes of action for: (a) violation of Labor Code §§1194, 1197, and 1197.1 (minimum wages); (b) violation of Labor Code §§ 510 and 1198 (unpaid overtime); (c) violation of Code §§ 226.7 and 512(a)(meal break violations); (d) violation of Labor Code § 226.7)(rest break violations); (e) violation of Labor Code §§ 204 and 210 (wages not timely paid during employment); (f) violation of Labor Code § 226 (a)(wage statement violations); (g) violation of Labor Code §§ 201-203 (untimely final wages); (h) violation of Labor Code §§ 2800 and 2802 (failure to reimburse necessary business expenses); and (i) violation of Business & Professions Code §§ 17200 *et seq*. [Poei Decl., ¶ 2].

2. On June 22, 2026, Plaintiff served the Summons and Complaint on Defendant's agent for service of process. [Poei Decl., ¶ 3 and Exh. "**A**" attached thereto].

/ / /

3. A true and correct copy of the remainder of the state court file served on Defendant – the Civil Case Cover Sheet, Civil Case Cover Sheet Addendum, and Alternative Dispute Resolution Information Packet – are attached to the Declaration of Hazel U. Poei as Exhibit "**B**." [Poei Decl., ¶ 4 and Exh. "**B**" attached thereto].

4. On July 15, 2026, Defendant timely filed and served its Answer to Plaintiff's Complaint in Alameda County Superior Court, making a general denial as permitted by California Code of Civil Procedure § 431.30(d) and asserting various affirmative defenses. [Poei Decl., ¶ 5 and Exh. "**C**" attached thereto].

5. On or about June 22, 2026, Plaintiff's counsel filed a Proof of Service of the Summons. On or about July 9, 2026, the Court issued a Minute Order (Complex Determination Hearing) and Order Complex Determination Hearing, On or about July 16, 2026, the Court also issued a Notice of Court Orders Re: Complex Determination Hearing. The Proof of Service of the Summons, the Minute Order (Complex Determination Hearing) and Order Complex Determination Hearing, and the Notice of Court Orders Re: Complex Determination Hearing are attached to the Declaration of Hazel U. Poei as Exhibit "**D**." [Poei Decl., ¶ 6 and Exh. "**D**" attached thereto].

6. As of the date of this filing, Exhibits "A"-"D" to the Declaration of Hazel U. Poei constitute all of the pleadings that have been filed or served in this action; and no further proceedings have occurred in the state court. [Poei Decl., ¶ 7].

## II. TIMELINESS OF REMOVAL

7. This Removal is timely because it is being filed within thirty (30) days after service of the Summons and Complaint. [Poei Decl., ¶ 3 and Exh. "**A**" attached thereto].

8. This Removal is, therefore, filed within the time period mandated by § 1446(b). *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.* (1999) 526 US. 344, 356 ("[T]he defendant's period for removal will be no less than 30 days from service, and in some categories, it will be more than 30 days from service, depending on when the complaint is received."); *see also*, California Code of Civil Procedure § 415.30(b).

/ / /

## III. VENUE

9. The State Court Action was filed in the Superior Court in and for the County of Alameda, which sits within the Northern District of California. 28 U.S.C. § 84(b). As such, Defendant is compelled to remove this case to the Northern District of California. *See* 28 U.S.C. § 1441(a).

## IV. REMOVAL IS PROPER BASED ON THE CLASS ACTION FAIRNESS ACT

10. Removal of this action is proper under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332 et seq. Section 4 of CAFA, 28 U.S.C. § 1332(d)(2), has been amended to read, in relevant part:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which – (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

11. In addition, CAFA provides for jurisdiction in the district courts only where the proposed class involves 100 or more members, or where the primary defendants are not States, State officials, or other governmental entities. 28 U.S.C. § 1332(d)(5).

12. As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d), in that it is a civil action filed as a class action involving more than 100 members, the matter in controversy – based on the allegations in the Complaint – exceeds the sum of $5,000,000, exclusive of interest and costs, and Plaintiff is a citizen of a state different from Defendants. *See* 28 U.S.C. §§ 1332(d) and 1453. Furthermore, none of the Defendants are a State, State official or other governmental entity.

### A. The Putative Class Contains More Than 100 Members.

13. To qualify for original jurisdiction under the CAFA, the number of putative class members encompassed by the proposed class action must number at least 100 members in the aggregate. *See* 28 U.S.C. § 1332(d)(5)(b).

/ / /

14. Here, the Complaint defines the proposed class as: "All current and former hourly-paid and/or non-exempt employees who worked for Defendants in the State of California at any time during the period from four years prior to the date of the filing of this Complaint through final judgment." [Poei Decl., ¶ 3 and Exh. "**A**" attached thereto]. Defendant's records identify at least **7,419** employees who were employed by Defendant during the period June 9, 2022 to June 30, 2026 ("Putative Class Period") [Declaration of Keith Bown ("Bown Decl."), ¶ 10]. At all times during this same time period, Accordingly, the numerosity requirement for jurisdiction under CAFA is satisfied.

**B. <u>Defendant Is Not a Government Entity or Official.</u>**

15. Defendant is not a State, State official, or other government entity.

**C. <u>Minimal Diversity is Satisfied Under CAFA.</u>**

16. The standard for establishing diversity of citizenship under the CAFA is different than diversity jurisdiction under 28 U.S.C. § 1332(a)-(c). CAFA's diversity requirement is satisfied when there is minimal diversity, i.e., when at least one member of a class of plaintiffs is a citizen of a state different from any named defendant. 28 U.S.C. § 1332(d)(2)(A); *see also, Benko v. Quality Loan Serv Corp*. (9th Cir. 2015) 789 F.3d 1111, 1116; *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.* (9th Cir. 2010) 602 F.3d 1087, 1090-91 (holding CAFA expanded original diversity jurisdiction for class actions meeting minimal diversity requirement in 28 U.S.C. § 1332(d)(2)); *Bradford v. Bank of Am. Cor.* (C.D. Cal. 2015) 2015 U.S. Dist. LEXIS 120800 at *13 ("[Defendant] needed only to establish that one plaintiff was a citizen of a different state from any one defendant at the time of removal").

17. Citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson* (9th Cir. 1986) 782 F.2d 790, 794.

18. For individuals, citizenship is determined by a person's domicile. *Lew v. Moss* (9th Cir. 1986) 797 F.2d 747, 749. "A person's domicile is her permanent home, where she

resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.* (9th Cir. 2001) 265 F.3d 853, 857.

19. Plaintiff is, and was at all times relevant to this action, a resident of the State of California. [Complaint, ¶ 9]. Moreover, Plaintiff's last known residential address with Defendant as of the time the Complaint was filed was in California. [Bown Decl., ¶ 8].

20. For diversity purposes, a corporation is considered a citizen of any state in which it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). With respect to ascertaining a corporation's principal place of business, the United States Supreme Court has adopted the "nerve center test." *Hertz Corp. v. Friend* (2010) 559 U.S. 77, 80-81. Under the nerve center test, a corporation's principal place of business is where a corporation's high-level officers direct, control and coordinate the corporation's activities. *Id.* A corporation can only have one "nerve center." *Id*. at 93-94. In evaluating where a corporation's "nerve center" is located, courts will look to the center of overall direction, control, and coordination of the company and will no longer weigh corporate functions, assets, or revenues in each state. *Id.*

21. Defendant is a corporation duly created and organized under the laws of the State of Virginia, with its headquarters in McLean, Virginia. [Bown Decl., ¶ 5]. Its corporate officers are based in McLean, Virginia; and the corporate officers direct, control and coordinate the corporation's activities from McLean, Virginia. [*Ibid*]. Its corporate officers do not engage in primary, fundamental operations in California. [*Ibid*]. Thus, Defendant is a citizen of Virginia.

22. Accordingly, because Plaintiff is a citizen of California and Defendant is a citizen of Virginia, there is complete diversity between Plaintiff and Defendant.

23. Defendant is unaware of any other defendant having been named or served with the Complaint in this action. The only other defendants named in the Complaint are fictitious parties identified as "Does 1 through 25." It is not necessary for Does 1 through 25 to join in this removal as they have been sued under fictitious names, have not been

served or received the Summons or the Complaint and, under 28 U.S.C. § 1441(b)(1), are disregarded for purposes of removal and are not proper parties in this Court.

### D. <u>The Amount in Controversy Exceeds $5,000,000 Based on a Plausible Reading of the Allegations in the Complaint.</u>[1]

24. Plaintiff does not allege any particular amount in controversy for the putative class. Where a plaintiff's state court complaint does not specify the particular amount of damages claimed for the entire action, the United States Supreme Court has held "a defendant's notice of removal need only include a plausible allegation that the amount in controversy exceeds the jurisdictional threshold," and the statement need not contain evidentiary submissions. *Dart Cherokee Basin Operating Co., LLC v. Owens* (2014) 135 S. Ct. 547, 553, 554. Even if an evidentiary showing were required, Defendant need only show by a preponderance of the evidence that the amount-in-controversy requirement has been satisfied. *Id*. at 553-54; *see also, Singer v. State Farm Mut. Auto Ins. Co.* (9th Cir. 1997) 116 F.3d 373, 377; *Sanchez v. Monumental Life Ins. Co.* (9th Cir. 1996) 102 F.3d 398, 404.

25. Under the CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under the CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Sen. Jud. Comm. Rep., S. REP. 109-14, at 42. Moreover, any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. S. Rep. 109-14, at 42–43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in

---

[1] Defendant denies each and every allegation set forth by Plaintiff in the Complaint and denies that Plaintiff or putative class members are entitled to any compensatory or statutory damages, injunctive relief, restitution, civil penalties, attorneys' fees, or any other relief. Defendant also denies that this action can proceed as a class action. Notwithstanding the above, removal of this action is proper based on the allegations asserted in the Complaint.

favor of exercising jurisdiction over the case … Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly ….”).

26. In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter* (C.D. Cal. 2022) 199 F.Supp. 993, 1001 (citing *Burns v. Windsor Ins. Co.* (11th Cir. 1994) 31 F.3d 1092, 1096 (the amount in controversy analysis presumes that “plaintiff prevails on liability”); *Angus v. Shiley Inc.* (3rd Cir. 1993) 989 F.2d 142, 146 (“the amount in controversy is not measured by the low end of an open-ended claim”)). Moreover, the argument and facts set forth herein may appropriately be considered in determining whether the jurisdictional amount in controversy is satisfied. *Cohn v. Petsmart, Inc.* (9th Cir. 2002) 281 F.3d 837, 843 n.1 (citing *Willingham v. Morgan* (1969) 395 U.S. 402, 407 n.3).

27. Notably, “[t]here is no obligation by defendant to support removal with production of extensive business records to prove or disprove liability and/or damages with respect to plaintiff or the putative class members at this premature (pre-certification) stage of the litigation.” *Muniz v. Pilot Travel Ctrs. LLC* (E.D. Cal. 2007) 2007 U.S. Dist. LEXIS 31515 at *15. Rather, a defendant seeking removal must prove by a preponderance of the evidence that the aggregate amount in controversy exceeds the jurisdictional minimum. *Rodriguez v. AT&T Mobility Servs. Ltd. Liab. Co.* (9th Cir. 2013) 728 F.3d 975, 977 (“the proper burden of proof imposed upon a defendant to establish the amount in controversy is the preponderance of the evidence standard”); *see Lewis v. Verizon Commc’ns, Inc.* (9th Cir. 2010) 627 F.3d 395, 400 (“The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant’s liability.”); *Arias v. Residence Inn* (9th Cir. 2019) 936 F.3d 920, 922, 925 (removing defendant may rely on reasonable assumptions in estimating amount in controversy, which “need not be proven”).

28. In *Dart Cherokee Basin Operating Co., LLC v. Owens*, the United States Supreme Court held that, like here, where the complaint is silent as to whether the amount

in controversy meets the CAFA's jurisdictional threshold of $5,000,000, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." (2014) 135 S. Ct. 547, 554 (emphasis added). Following *Dart*, the Ninth Circuit confirmed "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements," and further that "when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Salter v. Quality Carriers, Inc.* (9th Cir. 2020) 2020 U.S. App. LEXIS 28364 at *6–7 (citations and internal quotation marks omitted). Further, "'[n]o antiremoval presumption attends cases invoking CAFA' because 'Congress enacted [CAFA] to facilitate adjudication of certain class actions in federal court.'" *Adams v. Toys 'R' US – Delaware, Inc.* (N.D. Cal. 2015) 2015 U.S. Dist. LEXIS 11338 at *5–6, quoting *Dart*, 135 S. Ct. at 554. On the contrary, courts are required to interpret the CAFA's provisions broadly in favor of removal. *Jordan v. Nationstar Mortg. LLC* (9th Cir. 2015) 781 F.3d 1178, 1183-84.

29. Moreover, if a plaintiff asserts statutory violations, the court must assume that the violation rate is 100% unless the plaintiff specifically alleges otherwise. *See Muniz*, 2007 U.S. Dist. LEXIS 31515 at *12–13 ("As these allegations reveal, plaintiff includes no fact-specific allegations that would result in a putative class or violation rate that is discernibly smaller than 100%, used by defendant in its calculations. Plaintiff is the 'master of [her] claim[s],' and if she wanted to avoid removal, she could have alleged facts specific to her claims which would narrow the scope of the putative class or the damages sought.")(citing *Caterpillar, Inc. v. Williams* (1987) 482 U.S. 386, 392); *see also, Arreola v. The Finish Line* (N.D. Cal. 2014) 2014 WL 6982571 at *4 ("District courts in the Ninth Circuit have permitted a defendant removing an action under CAFA to make assumptions when calculating the amount in controversy – such as assuming a 100 percent violation rate, or assuming that each member of the class will have experienced some type of violation—when those assumptions are reasonable in light of the allegations in the complaint."); *Coleman v. Estes Express Lines, Inc.* (C.D. Cal. 2010) 730 F. Supp. 2d 1141, 1149 ("[C]ourts have assumed a 100% violation rate

in calculating the amount in controversy when the complaint does not allege a more precise calculation.”).

30. A removing defendant is “not required to comb through its records to identify and calculate the exact frequency of violations.” *Oda v. Gucci America, Inc.* (C.D. Cal. 2015) 2015 U.S. Dist. LEXIS 1672 at *12; *see Sanchez v. Russell Sigler, Inc.* (C.D. Cal. 2015) 2015 U.S. Dist. U.S. LEXIS 55667 at *5 (“[A] removing defendant is not obligated to research, state and prove the plaintiff’s claims for damages.”)(citation omitted). *See also*, *LaCross v. Knight Transport. Inc.* (9th Cir. 2015) 775 F.3d 1200, 1203 (rejecting plaintiff’s argument for remand based on contention that class may not be able to prove all amounts claimed: “Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable”); *Ibarra v. Manheim Invs., Inc.* (9th Cir. 2015) 775 F.3d 1193, 1198 n.1 (in alleging amount in controversy, defendants “are not stipulating to damages suffered, but only estimating the damages in controversy”). The ultimate inquiry is what amount is put “in controversy” by Plaintiff’s Complaint, not what Defendant will actually owe. *LaCross*, 775 F.3d at 1202 (explaining courts are directed “to first look to the complaint in determining the amount in controversy”)(citation omitted).

31. The amount in controversy may include general and special compensatory damages and attorneys’ fees that are recoverable by statute, such as the provisions of the California Labor Code at issue in this case. *Galt G/S v. JSS Scandinavia* (9th Cir. 1998) 142 F.3d 1150, 1155-56; *Goldberg v. C.P.C. International, Inc.* (9th Cir. 1982) 678 F.2d 1365, 1367 (attorneys’ fees may be taken into account to determine jurisdictional amount); *Clark v. Nat’l Travelers Life Ins. Co.* (6th Cir. 1975) 518 F.2d 1167, 1168 (“It is settled that the statutory penalty and a statutory attorney’s fees can be considered in determining whether the jurisdictional amount is met.”).

32. Defendant denies that it engaged in any Labor Code violations. But, because a plaintiff’s allegations are treated as true for purposes of determining the amount in controversy, Defendant is able to provide approximate damage calculations based on a reasonable, theoretical percentage of violations for purposes of demonstrating the claims

at issue satisfy the minimum damages threshold required for original jurisdiction under the CAFA. Courts routinely find that such theoretical projections are "reasonable" in the face of allegations like Plaintiff's here. *See, e.g.*, *Mendoza v. Savage Servs. Corp.* (C.D. Cal. 2019) 2019 WL 1260629 at *2 (noting courts "routinely apply a 20% violation rate . . . for meal and rest period premiums"); *Baker v. Propak Logistics, Inc.* (C.D. Cal. 2019) 2019 WL 4168998 at *5 (finding assumptions of 40% meal break violation rate and 20% rest break violation rate reasonable because "an allegation of 'pattern and practice' of violations . . . impl[ies] that violations occurred routinely and frequently, and not occasionally or sporadically"); *Bryant v. NCR Corp.* (S.D. Cal. 2018) 284 F. Supp. 3d 1147, 1151 (finding assumption of 60% violation rate reasonable where plaintiff alleged defendant had "policy and practice of meal and rest period violations"); *Torrez v. Freedom Mortg. Corp.* (C.D. Cal. 2017) 2017 WL 2713400 at *4 (finding assumption of 40% violation rate reasonable). *See also, Jauregui v. Roadrunner Transp. Servs.* (9th Cir. 2022) 28 F.4th 989, 993-94.

33. Here, as detailed below, Defendant has both plausibly alleged and established by a preponderance of the evidence that the amount in controversy exceeds $5,000,000 and the Court has jurisdiction pursuant to the CAFA. Plaintiff's claims place an aggregate amount in controversy exceeding $5,000,000, as follows:

a. There are at least **7,419** individuals ("Putative Class Members") who are or were employed by Defendant as non-exempt employees in the State of California during the Putative Class Period. [Bown Decl., ¶ 10]. Approximately **6,055** of those individuals separated their employment during the Putative Class Period. [*Ibid*].

b. Plaintiff alleges that he and Putative Class Members worked over 8 hours per workday and/or 40 hours in a week. [Complaint, ¶ 44].

c. Putative Class Members worked at least 282,232 workweeks during the Putative Class Period at an average hourly rate of approximately $25.85. [Bown Decl., ¶¶ 10, 13].

d. Plaintiff's first cause of action alleges that Defendant failed to compensate Plaintiff and the Putative Class Members at least minimum wages for all hours worked

because they worked off-the-clock before and after their shifts. [Complaint, ¶¶ 34, 35]. Conservatively estimating that Plaintiff and the Putative Class Members will attempt to recover 1 hour of unpaid minimum or straight time wages per workweek, this claim alone places in controversy at least **$7,295,687.20** (1 hour/workweek x 282,232 workweeks x $25.85).[2]

e. Plaintiff's second cause of action alleges that Defendant failed to compensate Plaintiff and the Putative Class Members for all overtime hours worked. [Complaint, ¶ 44]. Under Labor Code § 510, overtime work must be compensated at one and one-half times the regular rate of pay for an employee. Conservatively estimating that Plaintiff and the Putative Class Members will attempt to recover 1 hour of unpaid overtime wages applicable per workweek, this claim alone places in controversy at least **$10,943,545.80** (1 hour/workweek × 282,232 workweeks × $25.85 × 1.5 overtime multiplier).[3]

f. Plaintiff's third cause of action alleges that Defendant failed to provide Plaintiff and the Putative Class Members who worked no more than six (6) hours with a meal period and those who worked more than ten (10) but less than twelve (12) hours with a second meal period. [Complaint, ¶¶ 52, 53]. Under Labor Code § 226.7, an employee is entitled to one hour of pay at the employee's regular rate of compensation for each workday in which a legally compliant meal period is not provided. Conservatively estimating that Plaintiff will attempt to show that even just twenty-five percent (25%) of workweeks included a non-compliant meal period, this claim alone places in controversy at least **$1,823,924.30**(1 missed meal period/workweek × 282,232 workweeks × $25.85 x 0.25).[4]

---

[2] Defendant does not include the liquidated damages provided for in Labor Code § 1194.2. [Complaint, ¶ 38].

[3] For convenience and ease of calculation, Defendant assumes that the hourly overtime rate is 1.5 times the average hourly rate of $25.85. Defendant denies that it failed to compensate Plaintiff and the putative Class for all overtime hours worked at 1.5 times the "regular rate of pay" pursuant to Labor Code § 510.

[4] For convenience and ease of calculation, Defendant assumes that meal and rest break premiums are paid at employees' base rate of pay. Defendant denies that it failed to

g. Plaintiff's fourth cause of action alleges that Defendant failed to authorize and permit Plaintiff and the Putative Class Members to take legally compliant rest breaks. [Complaint, ¶¶ 62-64]. Under Labor Code § 226.7, an employee is entitled to one hour of pay at the employee's regular rate of compensation for each workday in which a legally compliant rest break is not provided. Conservatively estimating that Plaintiff will attempt to show that even just twenty-five percent (25%) of workweeks included a non-compliant rest period, this claim alone places in controversy at least **$1,823,924.30**(1 missed rest period/workweek × 282,232 workweeks × $25.85 x 0.25).

h. Plaintiff's sixth cause of action alleges that Defendant intentionally and willfully failed to provide Plaintiff and the Putative Class Members with accurate wage statements in compliance with Labor Code § 226. [Complaint, ¶ 76]. Section 226(e) provides that an employee suffering injury as a result of an employer's failure to provide accurate wage statements may recover fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) for each subsequent violation, not to exceed four thousand dollars ($4,000). The Putative Class Members have been paid on a bi-weekly basis throughout the Putative Class Period. [Brown Decl., ¶ 11]. Plaintiff's allegations suggest that some, but not all, wage statements during the Putative Class Period were noncompliant. Assuming that each of the approximately 7,419 Putative Class Members received 1 noncompliant wage statements during the applicable timeframe, this claim alone places in controversy at least **$370,950.00** ($50 x 1 initial violation x 7,419 employees).

i. Plaintiff's seventh cause of action alleges that Defendant failed to pay Plaintiff and the Putative Class members who are no longer employed by Defendant compensation due upon termination as required by Labor Code §§ 201 and 202. [Complaint, ¶ 83]. Pursuant to Labor Code § 203, an employee who is not timely paid all wages due upon termination may recover a penalty equal to the employee's daily rate of pay for each

properly pay meal and rest break premiums to Plaintiff and the putative Class at the "regular rate of pay" pursuant to Labor Code § 226.7.

day the wages are improperly withheld, for up to 30 days. Given the number of Putative Class Members whose employment was terminated during the Class Period (at least 6,055), this claim alone places in controversy at least **$37,565,220.00** ($25.85 × 8 hours × 30 days × 6,055 former employees).

j. Plaintiff's eighth cause of action alleges that Defendant intentionally and willfully failed to reimburse Plaintiff and the Putative Class Members for necessary business related expenses in compliance with Labor Code § 2802. [Complaint, ¶ 87]. Section 2802 requires an employer to reimburse its employees for all necessary expenditures incurred by the employees in direct consequence of the discharge of their job duties or in direct consequent of their obedience to the directions of the employer. Assuming that each of the approximately 7,419 Putative Class Members incurred $5/month in business expenses during the applicable time frame, this claim places in controversy at least **$352,790.00** [($5 x 282,232 workweeks x 0.25)].

k. Accordingly, the amount placed in controversy by Plaintiff's Complaint conservatively is at least **$ 60,176,041.60**. This amount is also based on the amount in controversy through June 30, 2026 only, and could be considerably greater if one were to assume a higher violation rate and additional workweeks in the Putative Class Period.

l. Importantly, the above estimates of the amount in controversy reach the jurisdictional threshold without including the unspecified amount of attorneys' fees that Plaintiff seeks. [Prayer for Relief, ¶¶ 9, 15, 21, 44, 49]. In determining whether a complaint meets the amount in controversy threshold for a removal under 28 U.S.C. § 1332, a court may also consider the value of claims for attorney's fees. *See Goldberg v. CPC Int'l, Inc.* (9th Cir. 1982) 678 F.2d 1365, 1367 (attorneys' fees may considered when determining jurisdictional amount); *see also Galt*, 142 F.3d at 1155–56 (holding amount in controversy may include attorney's fees recoverable by statute). Attorneys' fee awards in California wage-hour class actions can easily total several hundred thousands of dollars or more. *See, e.g., McGuigan v. City of San Diego* (2010) 183 Cal. App. 4th 610, 638 (noting attorneys'

fees paid in settlement of $1.6 million); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 287, 296 (2010)(affirming $558,926.85 in attorneys' fees in exemption misclassification class case, but reversing as to multiplier); *Vasquez v. California*, 45 Cal. 4th 243, 249 (2008) (noting award of $435,000 in attorneys' fees for class claims involving failure to pay wages, liquidated damages, penalties and waiting time penalties). Moreover, the Ninth Circuit recently concluded that the amount in controversy "is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Chavez v. JPMorgan Chase & Co.* (9th Cir. 2018) 888 F.3d 413, 414-15.

m. "Courts in this circuit have held that, for purposes of calculating the amount in controversy in a wage-and-hour class action, removing defendants can reasonably assume that plaintiffs are entitled to attorney fees valued at approximately twenty-five percent of the projected damages." *Fong v. Regis Corp.* (N.D. Cal. 2014) 2014 U.S. Dist. LEXIS 275 at *23; *see also, Herrera v. Carmax Auto Superstores Cal., LLC* (C.D. Cal. 2014) 2014 U.S. Dist. LEXIS 188729 at *12 ("Substantial authority supports a 'benchmark' 25 percent attorneys' fees figure to be added to any claim for which attorneys' fees are available."); *Hamilton v. Wal-Mart Stores, Inc.*, (C.D. Cal. 2017) 2017 U.S. Dist. LEXIS 162856 at *16 ("The Ninth Circuit has allowed an estimate fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA."); *Gutierrez v. Stericycle, Inc.* (C.D. Cal. 2017) 2017 U.S. Dist. LEXIS 20975 at *51 ("it is appropriate to include in the calculation of the amount in controversy a potential fee award of 25% of the value of certain of the substantive claims."). Here, 25% of the amount in controversy is **$15,044,010.40** for the Putative Class Members.

n. For the foregoing reasons, and without conceding or admitting to the underlying merit of Plaintiff's claims, the amount in controversy easily surpasses the $5,000,000 jurisdictional threshold required under CAFA.

/ / /

/ / /

## V. NOTICE TO ALL PARTIES AND STATE COURT

34. In accordance with 28 U.S.C. § 1446(d), the undersigned counsel certifies that a copy of this Notice of Removal and all supporting papers will be promptly served on Plaintiff's counsel and filed with the Clerk of the Los Angeles County Superior Court. Therefore, all procedural requirements under 28 U.S.C. § 1446 will be followed and satisfied.

## VI. CONCLUSION

Based on the foregoing, Defendant hereby removes the above-captioned action from the Los Angeles County Superior Court to this Court based on CAFA requirements (28 U.S.C. §§ 1332(d), 1441, 1446 and 1453), and respectfully requests that this Court retain jurisdiction for all further proceedings.

DATED: July 21, 2026

JACKSON LEWIS P.C.

By: ______________________________

Hazel U. Poei
Jane J. Kim

Attorneys for Defendant
SUNRISE SENIOR LIVING MANAGEMENT, INC.